Your Honor, the first case of the morning, call 209-625 Thomas Vincent v. Alden-Park Strathmoor, Inc. On behalf of the Appalachian, Mr. Frank Perricone. On behalf of the Appalachian, Ms. Lisa Jensen. Good morning. Justice Jorgensen's mother became ill, so she won't be here today. We'll listen to the tape. So, if that allows me, please proceed. May it please the court. Counsel, I represent the administrator in the underlying action. And this matter is before the court on a certified question pursuant to Supreme Court Rule 308A. It's plaintiff's position that the Nursing Home Care Act authorizes claims for willful and wanton misconduct for punitive damages. And that it's our position that punitive damages survives the death of the nursing home resident, Marjorie Vincent. The general rule that we know is that punitive damages claims generally do not survive the death of the plaintiff. However, there are several, two exceptions. The first exception is whether the statute upon which suit is brought authorizes punitive damages. It's our position that the Nursing Home Care Act, Section 3-603 authorizes punitive damages. That section of the Nursing Home Care Act reads as follows. A resident may maintain inaction under this act for any other type of relief, including injunctive and declaratory relief permitted by law. We believe that that statute is an enabling statute and it incorporates common law punitive damage claims via willful and wanton misconduct. Now, we base this on three separate reasons. First, the statute directly authorizes claims for punitive damages based upon willful and wanton misconduct. Second, the Illinois Supreme Court, in a trio of cases... You say that the act authorizes it. It doesn't say punitive damages, right? It says any other damages allowed by law and then it identifies two particular ones. It doesn't say punitive damages. You are correct. The words punitive damages are not in the statute. However, we believe that the statute incorporates any claim that a resident may have brought by common law. And that would be willful and wanton misconduct seeking punitive damages. So you are correct. It does not have the magic words punitive damages. But we believe it to be an enabling statute. Not only do we believe it to be an enabling statute for the relief, but the Supreme Court, in a trio of cases... Harris, Dardeen, and Eads support our position. All three cases were cases interpreting the Nursing Home Care Act. Harris dealt with whether the old trouble damage provision and punitive damages were a double recovery under the act. The Supreme Court in Harris said no, it is not a double recovery because the act authorizes all actions. And that they are cumulative and in addition to. The court in Dardeen, a 1999 case, dealt with whether the trouble damage provision elimination was retroactive or not. But Senator Harris distinguished a little because the plaintiff was a resident. That the plaintiff was alive. Alive. Yes. That is correct. In the Harris case, the plaintiff was alive. However, we get into Dardeen and the plaintiff was dead, the resident. And the plaintiff was a personal representative of the estate. And in that case, the court was asked to decide whether trouble damages and the right for punitive damages... Under the Nursing Home Care Act was a double recovery. Was retro or the trouble damage provision that was eliminated was retroactive or prospective. And the Dardeen court said it was not a vested right, the trouble damage provision, and said it would apply retroactively. But Dardeen, at page 300, makes the following statement. Under the amended version of the... And they're referring to the Nursing Home Care Act. This is... By amended, eliminating the trouble? Yes. That's the amendment they're referring to? Yes. Trouble damages were eliminated because it was not a vested right. And the court indicated that under the amended version of the statute, the elimination of punitive... trouble damages, Plaintiff may recover actual damages and attorney fees upon proof of defendant's violations of the act. And may additionally recover common law punitive damages upon proof of willful and wanton misconduct on part of the defendant. That is our position in this case. Then, several years later, in EADS, the Supreme Court was asked to determine whether or not claims under the Nursing Home Care Act required an affidavit under 2-622, in other words, a report from a doctor and an attorney's affidavit of a meritorious case. The Supreme Court said no, the Nursing Home Care Act did not require such an affidavit. And in distinguishing the Nursing Home Care Act from the wrongful death statute, the court in EADS at pages 103-104 make the following statement. By contrast, the Nursing Home Care Act allows plaintiffs to recover common law punitive damages upon proof of willful and wanton misconduct on the part of the defendants. So we believe that we have Supreme Court authority that supports our position. Further, we believe that the legislative history in the case of the elimination of trouble damages from the Nursing Home Care Act also supports our position. When Senator Falwell, in the debate in the elimination of punitive damages, made a statement, he said, Senator Falwell's argument, in fact, was that the statute, in no way, prevents a judge or jury from awarding punitive damages in any amount. So we believe by the plain language of the statute, providing for the maintaining an act for any relief permitted by law, the three Supreme Court cases of Harris, Dardeen, and EADS, and the legislative history in the repeal of trouble damages, that our position is correct. I think the court needs to step back and take a look at this. We're talking about reprehensible conduct. Before you go there, let me just say that the cases you just talked about, none of those really dealt expressly with the situation we have here about the survivability of those things, about punitive damages. You are correct. However, the Dardeen case was a case where the court made the statement that I read in the context of a special administrator suing. And the court indicated not that a nursing home resident, but the plaintiff, would have common law punitive damages based upon proof of willful and wanton misconduct. So you're suggesting that that was a survivorship case, even though it didn't expressly discuss the survivor? Absolutely. That's our position. A close reading of Dardeen should support our position on that issue. Again, we are talking about reprehensible conduct, but we're talking about the Nursing Home Care Act and why it was passed in the first place. The purpose was of bad treatment happening to elderly in nursing homes. It was a complete reform of the industry. The legislature gave these residents private attorney's general status to bring claims. And the reason why was that they're in the homes on a daily basis along with their family. And the legislative history of this statute, which is probably one of the very few, where the legislative history indicates that these residents were encouraged to bring claims for violations of the act. So we believe that the statutory basis supports our position. Now there's a second component that punitive damages will survive where there is strong equitable consideration. We believe the court doesn't even have to go this far. But if the court does, there are three criteria that we believe that need to be established for equitable considerations for punitive damages to survive the death of a plaintiff. One, that the conduct is offensive to a clear and strong public policy. There is no doubt in Illinois the public policy is to prevent willful and blunt misconduct to nursing home residents. I don't think there can be any question about that. Two, whether the conduct is criminal. There is a criminal statute for neglect of senior citizens or the elderly, criminal neglect. And the allegations of our complaints certainly arise to that level. And three, there is little or possibly no compensation to the plaintiff. Now we're talking about elderly folks who have, by the very nature, limited life expectancy. They're in nursing homes for a reason. They're not doing all that well, either physically or cognitively. So they do not have a long life expectancy. Our example was the wrong medication given to a nursing home resident who dies immediately. Under that situation, there would be no damage under the Nursing Home Care Act that this plaintiff would have. Granted, there would be a wrongful death remedy, but that is for the next of kin. Under the wrongful death statute, there would be no remedy under the Nursing Home Care Act. So we believe strong, equitable considerations support our position. But if the court were to test the strong, equitable considerations against our position with respect to the plain language of the statute, the three Illinois Supreme Court cases of Harris, Dardeen, and Eades, and the legislative history behind the repeal of treble damages where the senator indicated this elimination in no way prevents a judge or jury from awarding punitive damages in any amount. If you were to use those three considerations and bring them on over to our position that you don't even need to go that far, certainly the court would be well within the law in considering it that way to an extent. But we believe that common law punitive damages survives in this case under the Nursing Home Care Act for those reasons. Thank you. What's your interpretation of the Larson case, the recent first district case? Is that the Walgreens case? I believe it is. That case was dealing with strong, equitable considerations. It was not dealing at all with the statutory basis. So we've got to move it over to the right-hand column. The Larson case indicates that there would be strong, equitable considerations only if there was no recovery to the point of... No other remedy. That is correct. And we believe that the Larson case took a wrong reading of the Razzle case and the Grenwell case where we believe it properly sets forth the criteria for the strong, equitable considerations. We believe that that court, the Martin case, Martin v. Walgreens, did not properly apply Grenwell and Razzle. In view of the Matasevsky case, if I pronounce it correctly... I have trouble with that, too. And the fact that that was decided in 1995, since that time the legislature has taken no additional action after revoking the triple damage aspect of the statute, and there's certainly been enough time for the legislature to make a change if they intended punitive damages to be recovered in a common-law type action. And the cases you rely on arguably could be differentiated from the Matasevsky case. Do you have any comment regarding... I do with respect to the fact that the legislature does not need to act because punitive damages via willful and wanton misconduct are picked up through Section 3-603 of the Nursing Home Care Act which authorizes a resident to maintain an action under this act, Nursing Home Care Act, for any other type of relief. So that would incorporate relief given by willful and wanton misconduct seeking punitive damages. Now, with respect to the legislature, the legislature has attempted on two occasions to revive punitive trouble damages, and that has failed. I don't think it got out of committee. Counsel put... May I finish, Your Honor? Yes. And that on the third occasion, the legislature has... If you read the third occasion, the most recent occasion, the legislature tried to... or allowed the court in that bill to award punitive damages as opposed to the jury. So either the legislature was saying with that bill we're going to take it out of the hands of the jury and give it to the court, or the court in conjunction with the jury could award punitive damages. Then the plaintiff, under the Harris case, would exercise the election as to which remedy is sought. Punitive damages by a court, punitive damages by a jury. That amendment could be read those two ways. Thank you. Thank you. Ms. Jensen. Good morning. My name is Lisa Jensen. I represent the AFLE Alden Park Strathmore. May it please the court. Your Honors, the law in Illinois has been essentially the same for over the past 100 years, and that is that only compensatory damages survive the death of a claimant, such that punitive damages are not recoverable under the Survival Act. The Illinois Supreme Court in 1978 carved out a very limited exception in National Bank v. Norfolk and Western when they indicated that where a statute specifically provides for the recovery of punitive damages, then those damages are recoverable in a survival action. In that particular statute, in that particular case, the statute was the Public Utilities Act, and it specifically provided, in addition to actual damages, the court may, upon finding willful and wanton conduct, award damages for the sake of example and by way of punishment. And the court went to great pains to discuss the very specific nature of that language in indicating that the legislature wanted, under that statute, to allow for the survivability of punitive damages. Five years later, in Frown v. Subotex, the Illinois Supreme Court explained the distinction between the 100-year-plus rule preventing the award of punitive damages under the Survival Act and its decision in National Bank. It said, where a statute specifically provides for punitive damages, the survival action does not abate the cause of action. However, where punitive damages are sought under common law, no right to recover punitive damages in a survival action exists. In order for this court to find that the appellant is allowed to recover punitive damages under Natchevsky, National Bank, and Frown, it must be found that the Nursing Home Care Act specifically provides for punitive damages. That is the law in Illinois. And they cannot point to a specific statutory provision in the Act that allows for the provision of punitive damages. As you're well aware, the Act did provide for punitive damages, but that provision was repealed. You mean the trouble? The trouble damages. Was he correct that at that time they could be covered both trouble and punitive? Well, the court in Harris, the Illinois Supreme Court in Harris said that that statute allowed a specific statutory right for trouble damages, and there was also a separate common law right, and you could proceed under either. You couldn't recover both. At the end, you'd have to make an election of remedies, which is what Harris said. But Harris is very important, because Harris analyzed the statute when there was a specific provision for statutory damages, i.e., trouble, and there was this catch-all statute that they want to rely on. The court said, no, no, no. That's common law punitive damages. That's recovery for punitive damages under common law. That's separate and apart from the statutory. And while you may be able to prove your case under both, you have to elect a remedy at the very end. So when this legislature repealed punitive damages, all that was... Now, the second time you've done that, it's getting a little confusing, because you say there was a separate right to trouble and punitive, so we're distinguishing between those two things by name. And then you said they repealed the punitive. That's not what happened. They repealed the trouble. They repealed the trouble. But in the context we're discussing this, we're talking about them as two separate things. Your point is their source is one's common law and one's statutory. Right. But to change the terms in the middle of the sentence there, I find it a little confusing. Nobody repealed punitive. I mean, trouble damages certainly can be considered punitive, but, I mean, here we have to use language a little more precisely, where we're distinguishing between the two. So your point is that the trouble damages was specifically statutorily provided and it was eliminated. And it was eliminated. And the punitive damages may still survive. I'm not survivors, but I'm using the wrong word there. The punitive damages continue to be available as long as the person is alive. Correct. Correct. And once the trouble damages were eliminated, all that remained that the appellant can rely on for specific statutory authority, which is what the Illinois Supreme Court requires for survivability, is this catch-all section. Dardenne, however, ruled that punitive damages were not statutorily authorized after the repeal of trouble damages. Dardenne, at 186 Illinois 2nd, page 291, the introductory paragraph to Dardenne, Justice McMurrow writes, Prior to the amendment, section 3602 required a licensee to pay trouble damages plus costs and attorney's fees to a facility resident for a violation of the resident's rights under the Act. Public Act 89-197 repealed the trouble damages provision contained in section 3602 limiting recovery for violations of the Act to actual damages, costs, and attorney's fees. There can be no finding that the Act, after repeal of trouble damages, specifically provides for punitive damages. It simply is not found anywhere in the Dardenne case. Let's take a look at the section that the appellant wants to argue provides this quote specific statutory authorization. It says a resident may maintain an action under the Act for any other type of relief including injunctive and declaratory relief permitted by law. First of all, it says a resident. A resident is a person who is alive. In the Frown case, when the court was analyzing the distinction between a specific statutory authorization for punitive and common law, they specifically pointed out, at 98 Illinois 2nd, 333, the sentence of the Public Utilities Act that they were relying on for specific statutory authority permitted any person to assert the punitive damage claim. That language, any person, includes not only the injured party but also his personal representative after his death. The section that the appellant would have you rely on does not allow any person to maintain an action under the Act. It limits the right to a resident. In addition, the Act indicates that a resident may maintain an action under the Act for any relief permitted by law. Slow down a little bit. The section says a resident may maintain an action under the Act for any other type of relief permitted by law. Common law punitive damages in a survival action are not permitted by law. So where a resident who is alive may be permitted by law to recover common law punitive damages, a deceased former resident is not entitled by law, under Matchevsky and its progeny, to recover punitive damages. I think that probably the most specific case on point to sort of distill and distinguish all of these cases is the Dunkevich case that I cited in my brief. That's Dunkevich. Hold on just one second before you go to that. Remind me again, was Dardeen, were the facts in Dardeen, were they involving a deceased resident? Dardeen specifically, the plaintiff in Dardeen was a deceased, it was brought on behalf of the estate of a deceased person. But respectfully recall that Dardeen asked the owner of the Supreme Court to answer a certified question, not to rule specifically whether this plaintiff could recover, but to answer the certified question in general of whether the repeal of treble damages affected those causes of action that had accrued before the repeal. So Illinois Supreme Court was not deciding whether this particular plaintiff could recover, but rather what effect would a holding have on the class of plaintiffs who had their rights accrued before and then after. If appellant is correct, and Dardeen stands for the proposition that this common law right to recover punitive damages is enough to survive, then essentially what he's arguing is that Dardeen overruled Matchewski and his progeny. And that Dardeen was decided 10 years ago, and there is not a single case that has interpreted Dardeen as overruling Matchewski and his progeny. In fact, the Marston case is the most recent example of an exhaustive analysis of the rule on the survivability of punitive damages. Okay, but what do we do with this statement in Dardeen that's dealing with an estate, a deceased resident, and says that they can recover the damages? Well, I think that Dardeen, as I mentioned, speaks in generalities, and it speaks about, in general, under the Act, a plaintiff has a common law right,  has a right to recover common law punitive damages. But then you have to go back to the law on the recoverability of common law punitive damages to determine if they are in fact recoverable. They are recoverable if the resident is still alive. They are not recoverable if the resident is deceased. But my question is what do we say about that statement in the Supreme Court? We just say, look, they said this, but it doesn't apply to the particular plaintiff in the case they were dealing with. And respectfully, Your Honor, I would argue that it's because they were called upon to answer a certified question in general, not to decide whether this particular person had a right to recover. But in general, how did the repeal of treble damages affect those causes of action that had accrued before the repeal but were not brought to court until after the repeal? That's why the court was speaking in such generalities. Had the court truly been deciding whether the cause of that, the right to punitive damages survived under the Act, I would suggest it would have spent much more than one sentence in analyzing it. In the Dunkevage case, which I cited in my brief, and it is almost essentially on point from a legalistic standpoint, the court was called to determine whether under the Consumer Fraud Act a very general catch-all phrase, such as it is at issue here, was enough to allow punitive damages to survive under that Act. The court in Dunkevage said it did not. The court in Dunkevage said that although Section 10A of the Consumer Fraud Act provides that a court may award any relief which it deems proper, the Act does not explicitly authorize punitive damages. As such, they held that under Maciejewski and its progeny, that statute did not provide the type of specific statutory authority for the recovery of punitive damages that was required to make punitive damages survive. And, more importantly, Dunkevage went on to say that their court, the First District, had ruled just a year prior that punitive damages were recoverable under the Consumer Fraud Act. But they said the fact that we ruled they were recoverable, like Dardeen ruled that punitive damages were recoverable under the Nursing Home Care Act, doesn't mean, doesn't correlate into a finding that it's the kind of specific statutory authority that would allow that cause of action to survive. So just because you have a court say a catch-all may allow for the recovery of punitive damages doesn't mean that it would allow for the recovery of punitive damages in a survival action. That requires a whole another analysis, a more specific analysis, talking about whether the statutory provision is specific enough. I was a little confused. You talk about the statute in the Act here allowing the recovery of punitive damages. I thought the core of your argument was that the statute or the Nursing Home Care Reform Act doesn't necessarily allow it, it doesn't prohibit it, and it's separate, it's under common law. So it's not something that's allowed by the statute, it's just something that's not prohibited. It's not prohibited. It's a common law. It certainly allows for a common law cause of action because nothing prohibits it. Well, but if the statute is read to allow for punitive damages, then you're moving closer to his side of the debate, saying the statute allows it, authorizes it, and then that's a big disrespect too. I don't believe that the statute authorizes it, Your Honor. My only point was in the Dunkevich case, the court had ruled under the Consumer Fraud Act that it actually did authorize it, and they still wouldn't find that punitive damages survived because the statute under which they found punitive damages authorized was so general, it was a general catch-all phrase, and they said that does not meet the specific statutory requirement that the court had set down under Bansheevsky and his progeny. So I think our case is even stronger than Dunkevich, but even under Dunkevich, I think you could say even if you want to buy the plaintiff's argument that that general catch-all section of the act authorizes punitive damages, under Dunkevich that's not enough because it's not specifically statutorily authorized. I would like to get to, I would like to point out that three times since Dardeen was decided, three times bills have been introduced into the legislature seeking to add a punitive damage provision, and three times that those provisions have not passed. Bansheevsky and his progeny discussed very specifically that a decision to allow recoverability of punitive damages under survival action is a legislative decision. They refuse to bite onto the equitable arguments that several plaintiffs' counsel have espoused, and they have specifically cautioned that that is something the legislature should take up. They pointed out that the legislature took up a bill to amend the Survival Act to allow for recoverability of punitive damages, and that was defeated. In addition to that, the legislature took up three times a bill to amend the Nursing Home Care Act to allow for the recoverability of punitive damages, and in 2000, the first bill I discuss in my brief, that bill actually wanted to amend the act to specifically say, and these punitive damages will be awardable in a wrongful death and survival action claim, and that didn't pass. So to go to equitable considerations is not even appropriate when the legislature has, in its silence, already spoken that it is comfortable with the way the law currently exists. Even if you look at the equitable considerations, however, Marston indicates that you can only evaluate whether there is no right to recovery, and I would espouse, Your Honor, in this case, there is ample right to recovery if the plaintiff succeeds. She has a wrongful death action for her next of kin. She has a survival action for her pain and suffering. She will be amply compensated if she's allowed to proceed under the current statute. Thank you. Thank you. Ms. Butler. The wrongful death action is for the exclusive benefit of the next of kin. It is not a cause of action in the name of the nursing home resident. So under the Nursing Home Care Act, according to what counsel just said, there could be no recovery at times due to our example, the resident dies immediately after giving the wrong medication. With respect to the legislature, again, the three times, two of those times, they were attempting to revive treble damages. That's out. We know that. There is common law punitive damages that are permitted under the statute due to the enabling statute of Section 3-603. That third statute, counsel alongsides to, in that statute, the legislature was attempting to give the court, in our opinion, the power to award punitive damages and take it away possibly from a jury. So that is different. We believe that statutorily under the Nursing Home Care Act, under the broad provision of Section 3-603, common law punitive damages are permitted. And with respect to the Dardeen case, when that Dardeen case went back to the trial court after that certified question, that case became the law of the case for that case, and the court indicated that common law punitive damages for willful and wanton misconduct were available to that plaintiff. The court referred to plaintiff and not plaintiffs. Who ruled that way? Who said that's the law of the case and that particular plaintiff gets the right to recover punitive damages? It's our opinion that this sentence does. Under the amended version of the, referring to the Nursing Home Care Act, plaintiff may recover actual damages and attorney's fees upon proof of defendant's negligent violations of the act and may additionally recover common law punitive damages upon proof of willful and wanton misconduct on the part of the defendant. So the court... So what you're saying is when that case got back to the trial court, they would look at that law of the case and they'd say this particular plaintiff is entitled to this. But, I mean, I thought you were saying that there was some precedent, some site you were giving us that that's actually what happened. Oh, absolutely. I'm also arguing that, too. Where is that? Is that reported in a decision someplace? Page 300 of Dargene. No, no, no. That page 300 precedes the case going back to the trial court. When it got back to the trial court... Oh, I understand what you're saying. I thought you were saying it got back to the trial court and now we know what happened. The trial court was upheld on appeal, took a different view than your opponent just did. That's not what happened. No, we don't know that. Yeah, we don't know that. But then several years later in EADS, the Supreme Court, in differentiating the Lawful Death Act from the Nursing Home Care Act, made the following statement at page 103-104. By contrast, the Nursing Home Care Act allows plaintiffs to recover common law punitive damages upon proof of willful and wanton misconduct on the part of defendants. So we believe the Supreme Court is clear that the Nursing Home Care Act, via section 3-603, incorporates common law punitive damages by way of actions for willful and wanton misconduct. We believe that this case fits under the parameters of the National Bank case, where the court carved out the exception to the Survival Act with respect to punitive damages that were statutorily permitted. Punitive damages survive the death of the plaintiff, and the legislative history of this statute, taken in its entirety, supports our position. It's a remedial statute to protect residents of nursing homes. So for those reasons, we believe that the certified question presented by the trial court should be answered in the affirmative, essentially ruling that punitive damages under the Nursing Home Care Act upon proof of willful and wanton misconduct survive the death of the resident. Thank you.